## RICHARDSON *v*. RICHARDSON.

Where one of two executors settled a separate account prior to the act of 1834, showing a balance in his hands, the next of kin may sue for his share of the undisposed surplus since that act, though the co-executor was then living.

A settlement in the Orphans' Court of a distribution account is not necessary before the common-law action can be maintained, nor is a discharge from a citation to settle such an account, a bar to the action.

In such action, there being no account of the disposition of the funds, or proof as to the receipt of interest, the court directed the jury to charge interest on the balance of the administration account up to the time when the first legacy was due—after deducting that, to charge interest on the balance up to the maturity of the second legacy, and so on—and the judgment was affirmed.    (The legacies in this case always exceeding the amount of the interest.)

Where an administration account was settled in 1818, an action for the undisposed surplus by next of kin in 1844 is not barred by lapse of time, where all the legacies were not paid or payable until 1827.

IN error from the Common Pleas of Bucks.

*Dec.* 27.    In 1814, Joseph Richardson bequeathed $2,000 to each of his five daughters, payable at eighteen.    He named two executors, whom he also appointed guardians of his children, who severed in their accounts.    One of them, William Richardson, filed his account, which was confirmed in 1818, showing a balance in his hands of $7,057, interest from 1816, which he retained to pay the legacies of four of testator's daughters.    He died in 1832, and the same year his administrators, the present defendants, filed an

account of his guardianship, showing a payment of the legacies to the four daughters, with interest from the time they fell due, the last payment being in 1827; which was confirmed, and showed a small balance in his hands.

In 1835, the plaintiff petitioned in the Orphans' Court for a citation to the administrators of William Richardson, to settle his account as executor of Joseph Richardson. The answer, among other things, denied the jurisdiction, alleging it to be in the Common Pleas; and the court discharged the citation.

In 1843, similar proceedings were had against the executors of one of the administrators of William Richardson, with like result.

In 1844, Watson, the co-executor, died; but this action was brought before that event happened.

The present plaintiff was a son of the original testator, and claimed a share of the undisposed surplus of the estate. There was no evidence what disposition the executor had made of the funds, nor any evidence that he had received interest.

KRAUSE, P. J., directed the jury to charge interest on the fund in William Richardson's hands, from the time it was to draw interest according to the account confirmed in 1818, up to the time when the first legacy became due; add this amount to the principal, and deduct the legacy; and so on for each of the subsequent legacies. (In no instance did the interest equal the principal then due for the legacies; hence, compound interest was never charged.)

The case was argued last December Term, and now by

*Ross,* for plaintiffs in error.—The right to sue passed to the surviving executor of the original testator: Wms. on Ex. 134–5. 2. More especially cannot the plaintiff maintain this action under the act of 1834, which has been settled by 7 Barr, 315, and cases there cited. By it the right is vested in the *adm. de bonis non.* 3. There should have been a prior account settled in the Orphans' Court, to determine the amount due; for this action is for assets accruing since the account of 1818; and that court is the proper tribunal to settle disbursements and commissions: 1 Pa. 282; 1 W. 235. 4. The money was received, if at all, as guardian: 1 W. 370; 7 Barr, 459. 5. The decision of the Orphans' Court was conclusive that there was then nothing which the executor or guardian had to account for; and it cannot now be collaterally examined. 6. The lapse of time had barred the claim, by presumption of payment. In 1818, the account was filed; and this action was brought in 1844. The filing of an account does not rebut this

presumption : 2 Penna. 97.    7. The court allowed what was equivalent to rests, which are never to be allowed unless for corruption, which is not pretended here : 5 Barr, 87.    Partial payments in the mean time, make no difference : Ib.; 5 Raw. 323 ; 1 Binn. 199 ; 2 Rawle, 305 ; 1 Ashm. 305.

*Du Bois*, contrà.—The action lies exclusively against the executor who settles a separate account, and who has alone received the fund : 5 W. 225; 16 S. & R. 129 ; 8 W. 483.    The cases cited apply where there has been no account settled.    2. This estate was in course of settlement prior to 1834, and there was the act of 1807, 4 Sm. 402, which authorized this action; hence the operation of that act is excluded by § 70, and the cases cited do not apply.    3. An account had already been settled, and the only object was to recover interest and surplus on the amount admitted to be due, which constituted a personal debt of the executor : 5 Barr, 508. 4. This was in his hands as executor, and not as guardian.    In the latter capacity, he held only so much as was the property of his ward.    5. The decision was on the point taken by the answer, that the remedy was in the Common Pleas.    6. The time to create a presumption of payment did not begin until the youngest child came of age, which was in 1831, and a recovery had been sought since 1832.    Nor could the next of kin have sued until the last legacy was paid.    7. The rule as to interest was laid down in 8 S. & R. 458 ; 8 W. & S. 17.    Here, too, the executor did not show what he had done with the fund : 5 Raw. 333.

*Jan.* 22.    BURNSIDE, J.—It is a general rule, that if there are several executors appointed by the testator, who prove the will, and one dies, those who survive conclude the trust.    In such case no interest is transmitted to the representative of the deceased executor.    Both executors may sever in the receipt of money and the execution of the trust; and that was the case here.    The evidence is clear that John Watson and William Richardson, who were the executors of the estate and testamentary guardians of the children of Jos. Richardson, deceased, did sever in the performance of their duties.    They settled separate administration accounts, which is allowable by our law.    It is equally clear that all the funds of the estate went into the hands of Richardson, except $2,000 for the youngest child when she should come of age, which Watson took the care of.    If authority were wanted in a case so plain, it is found in Barclay *v.* Morrison, 16 S. & R. 129, where it was held that

where two executors separately administered different parts of a testator's estate, and one died, his administrators may settle a separate account of such deceased executor. Doebler v. Snavely, 5 W. 225, further settles that, upon a settlement of a joint administration account of two executors, and the subsequent death of one, an action lies against the personal representative of the deceased executor to recover a legacy under the will of his testator, upon the allegation and proof that the funds for the payment of the legacy came to the hands of such executor separately, because, says Mr. Justice Rogers, the actual receiver is alone liable to pay legatees. In such case there is no necessity of joining the other executor: 1 Salk. 318. This disposes of the most material question in the case.

2. It is further objected that the plaintiff being a residuary legatee, he has no power to sue for his share of the residuum, but that there ought to have been an administrator *de bonis non*. There were no debts to pay, and the action is brought to recover the residuum not disposed of by the will, the accumulation of interest in the hands of William Richardson at his death. The legacies were all paid as the will directed. The act of 1807, 4 Sm. 402, provides, "where any person shall hereafter die, having made and executed any last will and testament, and shall not therein have disposed of the residue of his or her personal estate, the executors therein named shall distribute such undisposed residuum among the next of kin, agreeably to the intestate laws of this commonwealth." Independently of this act, the executor in Pennsylvania has been considered a trustee for the next of kin: Wilson v. Wilson, 3 Binn. 557. In that case an action for money had and received, was held to lie against an executor to recover a distributary share of the testator's estate not disposed of by the will, and which had come to the executor's hands, as trustee.

3. It is alleged that no action can be maintained either by a personal representative of Jos. Richardson, or by any one of the residuary legatees, until William Richardson's administrators have filed a settlement of his accounts in the Orphans' Court, as executor of Jos. Richardson, deceased. The demand in this case is for money had and received by William Richardson, which the law said he was bound to pay over to the plaintiff. His representatives were equally liable if they had assets. It does not differ from the ascertainment of any other debt against the administrators of his estate: Geddis v. Irvine, 5 Barr, 508.

4. Again: it is objected that if there be a surplus after paying

the four wards, then the action cannot be maintained, because the surplus was received by William Richardson as testamentary guardian, and not as executor. There is nothing in this objection. The surplus came into his hands as executor, not as guardian. The act of Assembly makes him a trustee of the plaintiff as to this residuum, and such was the law independent of the statute: Watson *v.* Watson, *ut sup.* The English rule that the undisposed residuum belonged to the executor, was never adopted in this state. For such residuum the executor was personally liable, and styling him executor was surplusage.

5. It is contended that the proceedings in the Orphans' Court by citation, and the decree of the court discharging the respondents, being a decree by a court of competent jurisdiction, is a bar to the plaintiff's right to recover. That court had exercised its office and duties before the application for the citation was made. The accounts of William Richardson as executor had been settled, and the discharge of the citation was right, because that court had fulfilled its duties. The remedy for the complainant was an action at law in the Common Pleas.

6. It is said that the time which has elapsed since the account of William Richardson, the executor, was filed in 1818, constitutes a legal bar to the plaintiff's recovery, the presumption of law being that the whole balance was paid. The legacies were payable to the children as they severally arrived at eighteen. Hence the right of the next of kin did not arise until the legacies were all paid. The last of these became due and was paid in 1831, and the plaintiff has been seeking a recovery since 1832, and in 1844 he brought this action. It would be a perversion of law and justice to determine this assignment of error in the affirmative.

7. The remaining error assigned, is the rule adopted by the court in the computation of interest. A majority of this court think that on that ground the defendant has no just ground to complain. Our law forbids compound interest; and where there is mere negligence, or an omission to pay, simple interest only is allowed. But where a trustee has received interest, and has a payment to make, his duty is to apply the interest to the payment, and if that is not sufficient to make up the payment, to take the deficiency from the principal.

Here the executor, on the settlement of his administration account, had in his hands at interest upwards of $7,000, with which and its fruits, he had, at the periods specified in the will, to pay $8,000. When the first legacy fell due the eldest child and was payable, the

interest he had received was first to be applied in payment, and to make up the legacy of $2,000. And this was the rule adopted by this court when Ch. J. McKean was on the bench, in cases of bonds, mortgages, and judgments; where partial payments had been made: Penrose v. Hart, 1 Dall. 378; 8 S. & R. 458. The rule is fair to all the parties. In two years, thereafter or thereabouts, the next child was to be paid. The interest that had accumulated was then to be applied, and so much of the principal as was needed to make up the sum. And so with the others, until all were discharged. The balance then in his hands was by law to be divided among his representatives according to the intestate law, and it is only the proper proportion of that sum which the plaintiff recovered. I am satisfied there was no error in this direction.

Judgment affirmed.